

**Jeffrey R. Maguire**, Esq., Partner   o: (212) 939-7229   f: (212) 531-6129
a: 105 Maxess Road, Suite 124, Melville, NY 11747   e: jmaguire@stevensonmarino.com

December 14, 2022

<u>Via ECF</u>
The Honorable Hector Gonzalez
United States District Judge for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *Quinones v. Magic Cleaning Solutions LLC et al.*
            <u>Docket No.: 22-cv-197-HG</u>

Dear Judge Gonzalez:

    This firm represents named-Plaintiffs Kariseli Quinones and Miguelina Cepeda (collectively, as "Named Plaintiffs"), and the opt-in Plaintiffs that have filed consent to join forms with the Court pursuant to 29 U.S.C. § 216(b) (collectively, as "Opt-in Plaintiffs," and together with Named Plaintiffs as "Plaintiffs") in the above-referenced action involving Plaintiffs' wage claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") against Defendants, Magic Cleaning Solutions LLC ("Magic Cleaning") and Frannys Perez ("Magic Cleaning Defendants") and Diaz Consulting Group Limited ("Blue Moon"), BMM Management Corp., and Orian Diaz ("Blue Moon Defendants,") and Sandy Perez (collectively with Magic Cleaning Defendants and Blue Moon Defendants as "Defendants", and together with Named Plaintiffs as "the Parties"). We submit this letter, on behalf of the Parties, to respectfully request that the Court review and approve the Parties' settlement of the Named Plaintiffs' claims brought pursuant to the FLSA as fair and reasonable in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). Copies of the Parties' fully-executed settlement agreements are attached hereto as **Exhibits 1** and **2.**[1] [2]

---

[1] Named Plaintiffs also bring claims for Defendants' alleged violations of the New York Labor Law, which although resolved in the Parties' settlement agreement with the exception of Named Plaintiffs' class action claims, do not require court approval for dismissal. *E.g. Yunda v. SAFI-G, Inc.*, 2017 WL 1608898, at *2 (Apr. 28, 2017) (citing *Abrar v. 7-Eleven*, 2016 WL 1465360 (E.D.N.Y. Apr. 14, 2016)).

[2] Named Plaintiffs will supplement this motion with a fully-executed settlement agreement.

The Honorable Hector Gonzalez
December 13, 2022
Page 2 of 7

I. **<u>PRELIMINARY STATEMENT</u>**

On January 13, 2022, Named Plaintiff Quinones filed a Complaint in this Court against the Magic Cleaning Defendants, Blue Moon, and Orian Diaz, asserting claims that Defendants failed to pay her overtime in violation of the FLSA. *See* Dkt. No. 1. On that same day, Named Plaintiff Cepeda filed a consent join form, opting into the action under 29 U.S.C. § 216(b). *See* Dkt. No. 3. On February 21, 2022, the Court entered an Order setting the defendants' deadline to file their respective Answers no later than fourteen days following the filing of Named Plaintiffs' Amended Complaint. *See* Electronic Order (2/21/2022).

On March 16, 2022, Named Plaintiff Quinones filed a stipulation between the parties consenting to conditional certification of a collective action pursuant to 29 U.S.C. § 216(b), which the Court So-Ordered on March 17, 2022. *See* Dkt. Nos. 23 and 24. On April 12, 2022, Named Plaintiff Quinones distributed notices to approximately 650 current and former cleaners that were employed by Blue Moon in New York during the applicable FLSA statutory period. As result, twenty additional plaintiffs opted into the action. On May 12, 2022, Named Plaintiffs filed an Amended Complaint, adding additional NYLL claims as well as adding Defendants BMM Management Corp. and Sandy Perez as Defendants. *See* Dkt. No. 33. On May 26, 2022, the Blue Moon Defendants and the Magic Cleaning Defendants both filed separate Answers to the Amended Complaint, denying Named Plaintiffs' claims in their entirety. *See* Dkt. Nos. 37 and 39.

On September 1, 2022, and September 30, 2022, the Parties engaged in two separate mediations with a member of the Eastern District of New York's Mediation Program. Prior to the mediations, there was a full exchange of discovery, including payroll and time records that permitted the Parties to fully evaluate Plaintiffs' claims. As a result, the Parties agreed in principle to two separate settlements: one involving Named Plaintiff's FLSA/NYLL claims, and one involving the class action FLSA/NYLL claims on behalf of Plaintiffs and putative class members. Plaintiffs will separately file a motion seeking preliminary approval of the class action settlement between Plaintiffs and the Blue Moon Defendants.[3]

The reason for separately settling Named Plaintiffs' claims is because Named Plaintiffs, unlike the opt-in Plaintiffs and putative class, are the only two individuals that possessed claims that Defendants misclassified them as independent contractors for a period of time depriving them of overtime pay. While Named Plaintiffs also possess claims as Blue Moon employees, Named Plaintiffs are the only individuals in the lawsuit that assert overtime claims against both the Magic Cleaning Defendants and the Blue Moon Defendants for failure to pay overtime based on a theory of joint liability. All Opt-in Plaintiffs *only* worked for the Blue Moon Defendants and all worked

---

[3] The Magic Cleaning Defendants are not part of the class action settlement.

The Honorable Hector Gonzalez
December 13, 2022
Page 3 of 7

for the Blue Moon Defendants as IRS Form W-2 employees for the entirety of their employment. Accordingly, the Parties ultimately agreed to settle Named Plaintiffs' claims involving the independent contractor arguments separately and submit this motion seeking approval of the settlement of Named Plaintiffs' FLSA claims.

Based on Named Plaintiffs' damages and assessing Defendants' defenses, the Parties agreed to settle the matter for an aggregate sum of $50,000.00, with each Named Plaintiff to receive $25,000.00. These amounts will be received by Named Plaintiffs' in full as counsel will not be seeking attorneys' fees or costs in connection with this settlement, as counsel will submit a fee application in conjunction with Plaintiffs' request to approve the class action settlement. For the following reasons, the Court should approve the Parties' settlement of Named Plaintiffs' FLSA claims as fair and reasonable.

## II.     THE AGREEMENT IS FAIR AND REASONABLE

Court approval is required to settle and dismiss FLSA claims with prejudice under Federal Rule of Civil Procedure 41. *Cheeks*, 796 F.3d at 206-07. When analyzing a Rule 41 FLSA settlement, courts approve them "when they are reached as a result of contested litigation to resolve bona fide disputes." *Hall v. ProSource Techs., LLC*, 2016 WL 1555128, at *8 (E.D.N.Y. Apr. 11, 2016) (citing *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013)). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Kochillas v. National Merchant Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). Moreover, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. Further, "[t]he force of this presumption is increased when a settlement is reached with the assistance of an experienced mediator." *Saldana v. Middletown Car-G-Cam Uni Corp.*, 2015 WL 12591678, at *1 (S.D.N.Y. Sept. 23, 2015) (citing *Sukhnandan v. Royal Health Care of Long Island LLC*, 2013 WL 4734818, at *2 (S.D.N.Y. Sept. 3, 2012)).

In evaluating a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The *Wolinsky* factors consider: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Id*.

The Honorable Hector Gonzalez
December 13, 2022
Page 4 of 7

    A.  *Range of Possible Recovery*

In the Amended Complaint, Quinones alleged that she worked for the Blue Moon Defendants as a cleaner from approximately February 2017 until August 2021. Quinones alleged that until May 2019, she was paid by the Blue Moon Defendants as an employee, at which point she entered into an agreement with the Blue Moon Defendants to continue performing work as an independent contractor. Quinones further alleged that on December 28, 2020, the Blue Moon Defendants and Magic Cleaning Defendants started paying her as an independent contractor for her work for the entities' joint operation.

Quinones additionally alleged that for the duration of her employment, she performed the same job duties cleaning offices, and routinely worked six (6) days per week, working anywhere from forty-seven (47) to sixty-six hours (66) hours each day. For her work, she alleges that she was paid a rate that depended upon the number of hours that she cleaned, but failed to pay her at a rate of one and one-half times her regular rate for hours that she worked over forty each week.

Cepeda alleged that the Blue Moon Defendants hired her as a cleaner in October 2018, and she continued to work for them until January 2022. Cepeda alleged that the Magic Cleaning Defendants started paying her to perform work on or around December 28, 2020 (the same date alleged by Quinones). Cepeda alleged similar hours as Quinones, and further alleged that the Blue Moon Defendants paid her $600.00 on a semi-monthly basis from October 2018 until June 14, 2019. Cepeda further alleged that from June 15, 2019, until December 31, 2020, the Blue Moon Defendants paid her $600.00 on a weekly basis for her work. Starting on January 1, 2021, through the end of her employment with the Blue Moon Defendants, Cepeda alleged that she received $250.00 per week from the Blue Moon Defendants, and $660.00 on a semi-monthly basis from the Magic Cleaning Defendants for her work. Cepeda alleged that for the duration of her employment, Defendants failed to pay her one and one-half times her regular rate for the hours that she worked over forty in a workweek.

As a result of the discovery, the Parties were able to fully evaluate Named Plaintiffs' damages. Based on the payroll and time records, Quinones calculated her *best* possible recovery to be $28,666.07 in actual damages and an equivalent amount of liquidated damages, totaling $57,332.14 under the FLSA. Cepeda calculated her *best* possible recovery to be $20,996.79 in actual damages and an equivalent amount of liquidated damages, totaling $41,933.57. Thus, Quinones' recovery of $25,000.00 represents 87% of her best in actual damages and 44% of her best day if she prevailed on liquidated damages as well. Cepeda's recovery of $25,000.00 represents 119% of her best day in actual damages and 60% if she prevailed on liquidated damages. Importantly, courts have found that settlements exceeding 25% of maximum possible recovery to be reasonable. *See Lesser v. TIAA Bank, FSB*, 2020 WL 6151317, at *2 (S.D.N.Y. Oct. 20, 2020)

(collecting cases); *Gervacio v. ARJ Laundry Servs. Inc.*, 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (finding twenty percent of maximum recovery reasonable in light of circumstances); Villanueva v. 179 Third Avenue Rest Inc., 2018 WL 4100479, at *2 (S.D.N.Y. Aug. 28, 2018) (finding "less than six percent of estimated maximum recovery" to be reasonable in light of the circumstances).

Clearly, due to the calculation of Named Plaintiffs' damages, in consideration of their best possible recovery based upon their allegations in relation to their actual recovery, this agreement is undoubtedly both fair and reasonable. The presumption of reasonableness is increased due to the fact that the Parties reached these numbers with the assistance of a mediator. This factor weighs in favor of approval of Named Plaintiffs' FLSA claims.

    B.  *Avoidance of Burdens, Expenses, and Litigation Risks*

Further, settling at this stage "avoids the risks and burdens of litigation . . . as well as the costs, uncertainties, and delays inherent in litigation of this nature." *See Lesser*, 2020 WL 6151317, at *2. Indeed, were a settlement not reached at this stage, the Parties would have then been obligated to engage in depositions of Named Plaintiffs, and subsequent motion practice. Defendants would undoubtedly move for summary judgment on the issue of joint liability and independent contractor classification, making Named Plaintiffs' prospects for recovery weaker. Indeed, the settlement for the two Named Plaintiffs was reached after extensive review of the documents provided in discovery by Defendants. Based on these documents, Named Plaintiffs' likelihood of success became much more uncertain as Defendants had genuine arguments for paying Named Plaintiffs as independent contractors. This was especially the case for Quinones, who signed contracts with the Blue Moon Defendants to work on an independent contractor basis. On the other hand, with respect to Cepeda, there was a dispute of hours worked, as the hours shown for Cepeda were fewer than those that she alleged. For both Named Plaintiffs' to succeed against the Magic Cleaning Defendants, Named Plaintiffs would need to succeed on their theory of joint liability, which also presented uncertainty.

Moreover, even if Named Plaintiffs prevailed on their actual damages, meeting their burden of willfulness entitling them to liquidated damages was also a legitimate risk. Based on Blue Moon Defendants entering into contracts to employ Quinones as an independent contractor, Quinones might not be able to satisfy her burden that the Blue Moon Defendants' alleged failure to pay her overtime was willful. Therefore, her recovery of 87% of her actual damages *on her best day* is especially reasonable. With respect to Cepeda, discovery also revealed that Blue Moon Defendants possessed an argument that it had no knowledge of Cepeda's work with the Magic Cleaning Defendants, as the Blue Moon Defendants *always* paid Cepeda as a W2 employee for the duration of her employment with them. Thus, her risk of proving willful wage violations was also high.

Lastly, the Parties would then likely proceed to a trial in this matter, followed by post-trial motions and a potential appeal, resulting in a delayed resolution of Named Plaintiffs' claims at potentially great expense. At this point in the action, there have not been substantial out-of-pocket litigation expenses incurred, but depositions would naturally increase the costs of the litigation. Additionally, in the event that Named Plaintiffs were successful at trial and prevailed in obtaining a judgment against Defendants, the burden and expense of enforcing that judgment must be considered. *See Millan v. Sushibym, Inc.*, 2020 WL 5628046, at *1 (S.D.N.Y. Sept. 21, 2020) (finding that the "risk that plaintiffs would not be able to collect, or fully collect, on a judgment" supported approving the settlement). This is a significant risk, as any judgment against the Magic Cleaning Defendants would likely be difficult to recover upon. This settlement eliminates all of those burdens, costs, and risks, which in totality weighs in favor of approval of the settlement.

### C. Arms-Length Bargaining, No Fraud or Collusion, No Cheeks Admonitions

As detailed herein, this settlement was reached before expending more resources on depositions, and potential motion practice. Both sides realized that continued litigation would not be in the best interests of any party involved, and as a result of that recognition, the negotiations were aggressively pursued on both sides to come to a fair and reasonable compromise. Indeed, this settlement was reached after two mediations with a mediator that is experienced in wage and hour matters. Accordingly, the settlement achieved here clearly reflects an arm's-length negotiation absent from fraud or collusion and a reasonable compromise over the contested issues at stake in the matter.

Furthermore, the Parties' agreement contains a release limited to wage-related claims. *See Millan*, 2020 WL 5628046, at *1. Likewise, the agreement does not contain a confidentiality clause or a non-disparagement clause. *See Ream v. Berry-Hill Galleries, Inc.*, 2020 WL 8514826, at *2-3 (S.D.N.Y. Dec. 4, 2020) (citing *Lopez v. Nights of Cabiria, LLC*, 2015 WL 1455689, at *5 (S.D.N.Y. 2015).

The Parties' proposed order, submitted with the present motion, requests that the Court retain jurisdiction of this matter for the sole purpose of enforcing the terms of the settlement agreement and entering judgment in accordance therewith should it become necessary.

### III.   CONCLUSION

In light of the foregoing, the Parties respectfully request that the Court approve their settlement of Named Plaintiffs' FLSA claims, while retaining jurisdiction for the sole purpose of enforcing the Parties' agreement and entering judgment in the event of a breach in accordance with the agreement's terms. Named Plaintiffs' do not seek dismissal of their claims at this point, as Named Plaintiffs will also serve as class representatives for the class settlement, which will be

The Honorable Hector Gonzalez
December 13, 2022
Page 7 of 7

submitted to the Court for preliminary approval in a separate motion.

                                                  Respectfully submitted,

                                                  Jeffrey R. Maguire, Esq.
                                                  Stevenson Marino LLP

C:  All Counsel of Record *via* ECF